**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| _____ | ) | |
| DAY KIMBALL HEALTHCARE, INC. and | ) | |
| ERICA J. KESSELMAN, M.D., | ) | |
|  | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 3:19-cv-01521-KAD |
|  | ) | |
| ALLIED WORLD SURPLUS LINES | ) | |
| INSURANCE COMPANY F/K/A DARWIN | ) | |
| SELECT INSURANCE COMPANY and | ) | |
| STEADFAST INSURANCE COMPANY, | ) | |
|  | ) | |
| Defendants. | ) | |
| _____ | ) | October 17, 2019 |

**DEFENDANT ALLIED WORLD SURPLUS LINES INSURANCE COMPANY F/K/A**
**DARWIN SELECT INSURANCE COMPANY'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendant Allied World Surplus Lines Insurance Company f/k/a Darwin Select Insurance Company ("Allied World") respectfully submits this Memorandum of Law in support of its Motion to Dismiss the complaint (the "Complaint") of Plaintiffs Day Kimball Healthcare, Inc. ("Day Kimball") and Erica J. Kesselman, M.D. ("Dr. Kesselman") (together, "Plaintiffs"), with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.      INTRODUCTION

This insurance coverage dispute presents straightforward issues of contract interpretation that can be decided by applying the unambiguous language of the subject policy to the facts as alleged in Plaintiffs' Complaint.  The sole question presented is whether the Complaint plausibly states a claim for coverage under a claims-made and reported insurance policy, where it is undisputed that the claim for which coverage is sought was first made two years after the expiration of the policy period and Plaintiffs never provided notice to the insurer during the

policy period of any circumstances that may lead to the claim.  Pursuant to the express terms of the policy, the answer must be no.

 Allied World issued an umbrella liability insurance policy to Day Kimball for the claims-made and reported policy period of October 1, 2012 to October 1, 2013.  In this action, Plaintiffs seek a determination that there is coverage under the policy for a claim alleging medical negligence in connection with a patient's labor and cesarean delivery at a Day Kimball healthcare facility on August 7, 2013, which allegedly caused cerebral palsy in the newborn. The patient also required a second surgery because a sponge was left inside of her abdomen during the caesarian section procedure.  Plaintiffs did not notify Allied World of circumstances surrounding the problematic August 7, 2013 labor and delivery.

The Allied World policy expired on October 1, 2013, and the parties did not renew the insurance contract.  In November 2015, more than two years after the Allied World policy had expired, the patient and her child first made a claim against Plaintiffs, filing a lawsuit in Connecticut state court alleging medical negligence in connection with the 2013 labor and delivery.  Plaintiffs did not notify Allied World that a lawsuit had been filed.  Indeed, Plaintiffs failed to notify Allied World of the lawsuit until March 24, 2017, after it had been pending for a year and a half.  Thus, the first time that Plaintiffs notified Allied World of the claim for which they now seek coverage was three and a half years after the Allied World claims-made and reported policy period had expired and the parties' insurance relationship had ended.

Under these facts, Plaintiffs do not and cannot state a plausible claim for coverage under the policy.  The policy requires, as a condition precedent to coverage, that a claim must be first made during the policy period.  Typical of claims-made and reported policies, the Allied World policy permits (and in some cases, including those here, requires) the insured to give notice

during the policy period of certain known circumstances that could result in a claim, in which event any later claim arising from those circumstances will be deemed to have been made during the policy period.  By virtue of these provisions, the insured can obtain coverage for all claims made during the policy period and for later claims arising from known circumstances reported to the carrier during the policy period.  At the same time, the carrier can close the books on the policy at the end of the policy period, knowing that it is aware of the full universe of claims and potential claims for which it may be obligated to provide coverage.  That ability of the carrier to know the entire scope of claims and potential claims at the end of the policy period is what distinguishes a claims-made and reported policy from an occurrence policy and, critically, what enables a claims-made and reported policy to be purchased by an insured for a lower premium than the cost of an occurrence policy.

Here, Plaintiffs did not give notice to Allied World of the circumstances surrounding the patient's August 7, 2013 labor and delivery or its traumatic outcome.  Accordingly, the claim (which was first made when the lawsuit was filed two-plus years after the policy period ended) cannot be deemed to have been made during the policy period because Plaintiffs never reported the incident to Allied World until after the policy had already been expired for over three years.

For these reasons, the claim was not first made during the Allied World policy period, and it does not trigger coverage under the policy's insuring agreement. Plaintiffs therefore cannot state a plausible claim for relief.  Allied World respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice.

## II.    FACTUAL BACKGROUND

### A.    The Allied World Policy

Allied World issued Health Care Organization Umbrella Liability Insurance Policy No. 0305-9808 to Day Kimball and other specified **Insureds** for the **Policy Period** of October 1, 2012 to October 1, 2013 (the "Allied World Policy").[1]  A true and correct copy of the Allied World Policy, except for the **Application**, is attached as Exhibit B to Plaintiffs' Complaint.

### i.    A Claim must be first made during the Policy Period of the Allied World Policy to trigger coverage.

Subject to its terms and conditions, the Allied World Policy's Professional Liability Insuring Agreement provides specified coverage for "**Loss** and **Defense Expenses** in excess of the **Applicable Underlying Limit** for the coverage identified in Item 1 of the Schedule of Underlying Insurance or Underlying Self Insurance[,] which the **Insured** becomes legally obligated to pay as a result of a **Claim** alleging a **Medical Professional Incident**."  Allied World Policy (Ex. B), Section I.A ("Insuring Agreement A").  Insuring Agreement A further specifies that, for coverage to be triggered, such **Claim** must be "first made against the **Insured** during the **Policy Period** or any applicable Extended Reporting Period."  Allied World Policy (Ex. B), Section I.A.1.  The Allied World **Policy Period** is October 1, 2012 to October 1, 2013.  Allied World Policy (Ex. B), Declarations, Item 2.

The Allied World Policy defines "**Claim**" to mean "a written demand seeking monetary damages."  Allied World Policy (Ex. B), Section II.F.  "**Medical Professional Incident**" means, in relevant part, "an actual or alleged act, error or omission in the **Insured's** rendering of or failure to render **Medical Professional Services**[.]"  Allied World Policy (Ex. B), Section II.S.

---

[1] Terms in bold-face type are bolded and defined terms in the Allied World Policy.  Allied World reserves the right to challenge whether Dr. Kessleman is an **Insured** under the Allied World Policy.

The Allied World Policy in turn defines "**Medical Professional Services**" to include, in relevant part, "services performed in the treatment or care of any person, including: medical, dental nursing, psychiatric, osteopathic, chiropractic, dental or other professional care or services" or "the furnishing or dispensing of medications, drugs, blood, blood products, medical or surgical supplies, equipment or appliances in connection with treatment or care."  Allied World Policy (Ex. B), Section II.T.

> ii.     **The Allied World Policy allows for, and in some instances compels, the Insured to report during the Policy Period circumstances that may lead to a Claim.**

Section IV.D of the Allied World Policy sets forth the **Insured's** reporting obligations, noting that, "as a condition precedent to any right to coverage under this Policy," the **Insured** "must . . . comply with the notice and reporting provisions set forth below."  Allied World Policy (Ex. B), Section IV.D.  In particular, Section IV.D.1 of the notice provision states, in relevant part, that:

> The **Insured** must provide the **Insurer** with prompt notice of any
> **Claim** under the **Underlying Insurance**, or any circumstances that
> could give rise to a **Claim** under any **Underlying Insurance**,
> involving . . . birth related injuries, including but not limited to, . . .
> cerebral palsy . . . [or] severe internal injuries, including but not
> limited to . . . foreign body retention . . . .

Allied World Policy (Ex. B), Section IV.D.1.  The Allied World Policy also is explicit that "[n]otice to any underlying insurers of matters listed in D.1 . . . will not be deemed sufficient to establish reporting or notice to the **Insurer**.  Notice of a matter listed in subsections D.1 . . . must be sent in writing by certified mail, express overnight mail, or prepaid courier to the **Insurer** at the address specified in Item 5 of the Declarations."  Allied World Policy (Ex. B), Section IV.D.4.  The Allied World Policy defines "**Insurer**" to mean Allied World, "the Company

identified in the Declarations."  Allied World Policy (Ex. B), Section II.P; Allied World Policy

(Ex. B), Declarations.

Where notice of circumstances is provided under Section IV.D, any later-made **Claim** is

treated as having been made at the time of the initial notice to Allied World pursuant to Section

IV.F of the Allied World Policy.  That provision specifies that:

> [a]ll **Related Claims**, whenever made, shall be deemed to be a single **Claim** and
> shall be deemed to have been first made on the earliest of the following dates:
>
> (1) the date on which the earliest **Claim** within such **Related Claims** was
> received by an **Insured**; or
>
> (2) the date on which written notice was first given to [Allied World] of an act,
> error, omission or **Occurrence** which subsequently gave rise to any of the
> **Related Claims**, regardless of the number and identity of claimants, the number
> and identity of **Insureds** involved, or the number and timing of the **Related
> Claims**, and even if the **Related Claims** comprising such single **Claim** were
> made in more than one **Policy Period**.

Allied World Policy (Ex. B), Section IV.F.[2]

## B.    The *Corona* Action

This coverage dispute stems from Plaintiffs' request for coverage under the Allied World

Policy in connection with the complaint captioned *Meagan Corona, et al. v. Day Kimball

Healthcare, Inc., et al.*, Docket No. X07-HHD-CV15-6075511 (Superior Court of Connecticut

for the Judicial District of Putnam) (the "*Corona* Action"), which arises from the allegedly

negligent medical care that Plaintiffs provided to Meagan Corona ("Corona") and her newborn

---

[2] The Allied World Policy defines "**Related Claims**" broadly to mean "all **Claims** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events, whether related logically, causally or in any other way."  Allied World Policy (Ex. B), Section II.EE.

daughter, Estella Tabor ("Tabor").  Plaintiffs allege that a copy of the revised complaint in the *Corona* Action is attached as Exhibit A to their Complaint.

As alleged in the *Corona* Action, on or about August 6, 2013, Corona was admitted to Day Kimball with infrequent contractions in connection with her high-risk pregnancy.  *Corona* Action Complaint (Ex. A), ¶¶ 9-10.  When she was admitted, monitors indicated certain abnormalities, including an irregular fetal heart rate and excessive contractions.  *Corona* Action Complaint (Ex. A), ¶ 12.  Notwithstanding that Corona was experiencing increased contractions, she continued to receive Pitocin, a contraction-inducing drug.  *Corona* Action Complaint (Ex. A), ¶ 14.  Dr. Kesselman, an obstetrician, induced Corona at 5:42 PM on August 7, 2013 by rupturing the membrane, at which time she allegedly left the hospital instead of monitoring Corona.  *Corona* Action Complaint (Ex. A), ¶¶ 15-16.  The fetus went into distress shortly thereafter at 8:14 PM on August 7, 2013.  *Corona* Action Complaint (Ex. A), ¶ 19.  Corona then underwent a cesarean section, which was performed by Dr. Kesselman, and she gave birth to Tabor at 8:43 PM on August 7, 2013.  *Corona* Action Complaint (Ex. A), ¶¶ 20-21.

After delivery, Tabor was immediately transported to UMASS Medical Center and placed in the neonatal intensive-care unit.  *Corona* Action Complaint (Ex. A), ¶ 27.  She was diagnosed with cerebral palsy.  *Corona* Action Complaint (Ex. A), ¶ 28.

After the cesarean section was completed, the laparotomy sponge count revealed that a sponge was missing.  *Corona* Action Complaint (Ex. A), ¶ 29.  An x-ray performed on August 7, 2013 revealed that the missing surgical dressing had been left inside Corona.  *Corona* Action Complaint (Ex. A), ¶ 31.  This "sponge and foreign body was left inside the patient from the prior C-section procedure at Day Kimball Hospital on August 7, 2013."  *Corona* Action

Complaint (Ex. A), ¶ 35.  On August 15, 2013, Corona underwent surgery at UMASS Medical Center to remove the sponge.  *Corona* Action Complaint (Ex. A), ¶ 34.

More than two years later, on November 3, 2015, Corona filed the *Corona* Action in Connecticut state court against Plaintiffs.  Compl. ¶ 17.  The *Corona* Action asserts causes of action against Plaintiffs for medical negligence.  *Id*. ¶ 18.  Corona seeks money damages of $15,000 or more, exclusive of interest and costs.  *Corona* Action Complaint (Ex. A), Statement of Amount in Demand.

> **C.    Day Kimball notifies Allied World of Corona's traumatic birth outcome and the *Corona* Action three and a half years after the claims-made and reported Allied World Policy had expired.**

On August 8, 2013, just one day after Corona gave birth to her daughter, Day Kimball notified its primary insurer of Corona's labor and delivery complications.  Compl. ¶ 22.  Day Kimball did not provide notice to Allied World at that time or at any time before the Allied World Policy expired on October 1, 2013.  *Id*. ¶ 24.  Indeed, Day Kimball did not provide any notice whatsoever to Allied World until March 24, 2017—three and a half years after the expiration of the Allied World Policy and a year and a half after the *Corona* Action had been filed.  *Id*. ¶ 24.

By letter dated April 10, 2017, Allied World advised Day Kimball of its determination that there was no coverage available under the Allied World Policy for the *Corona* Action because the **Claim** was first made on November 3, 2015, long after the expiration of the Allied World Policy.  *Id*. ¶ 25.  More than two years later, Plaintiffs filed this coverage litigation.

## III.    STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to assess the legal feasibility of the complaint.  *See Micalizzi v. Nationwide Mut. Ins. Co.*, Civil

Action No. 3:06cv59 (SRU), 2007 WL 879137, at *1 (D. Conn. Mar. 22, 2007).[3]  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).  A motion to dismiss must be granted where no set of facts consistent with the allegations could be proven entitling the plaintiff to relief.  *See Aguilar v. United Nat. Ins. Co.*, 825 F. Supp. 456, 457-58 (D. Conn. 1993).  In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  *See A& M Towing & Recovery, Inc. v. Stonington Ins. Co.*, Civil No. 3:11–CV–01377 (JCH), 2012 WL 1195022, at *1 (D. Conn. Apr. 9, 2012).

## IV.   ARGUMENT

The Allied World Policy is written on a claims-made and reported basis.  It provides coverage only for **Claims** first made during the **Policy Period**.  Where an **Insured** becomes aware during the **Policy Period** of circumstances that may give rise to a **Claim**, it may (or in some cases must) give notice to Allied World during the **Policy Period**, in which event any later **Claim** arising from the circumstances reported during the **Policy Period** will be deemed to have been made during the **Policy Period**.  Because the **Claim** for which Plaintiffs seek coverage was not made until long after the **Policy Period** expired, and because Plaintiffs did not give notice of circumstances that could give rise to the **Claim** during the **Policy Period**, there is no coverage available under the Allied World Policy and Allied World's motion to dismiss should be granted.

### A.   Connecticut Insurance Law

Under Connecticut law, the interpretation of an insurance policy is a question of law for the Court.  *See Arrowood Surplus Lines Ins. Co. v. Westport Ins. Corp.*, Civ. No. 3:08CV01393,

---

[3] All unreported decisions are attached as Exhibit 1.

2010 WL 56108, at *2 (D. Conn. Jan. 5, 2010) (citing *Pac. Indem. Ins. Co. v. Aetna Cas. & Sur. Co.*, 688 A.2d 319, 321 (Conn. 1997)), *aff'd*, 395 F. App'x 778 (2d Cir. 2010).  Insurance policies are to be "'interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy.  The policy words must be accorded their natural and ordinary meaning.'"  *Id.* (quoting *Hansen v. Ohio Cas. Ins. Co.*, 687 A.2d 1262, 1264 (Conn. 1996)).  Further, courts applying Connecticut law refuse to "torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings."  *Hammer v. Lumberman's Mut. Cas. Co.*, 573 A.2d 699, 705 (Conn. 1990).

> **B.**  **There is no coverage for the *Corona* Action because the Claim was not first made during the Policy Period of the Allied World Policy.**

> > **i.**  **The claims-made requirement is a fundamental condition of the Allied World Policy's coverage grant.**

The Allied World Policy affords coverage only for those claims that are first made against the **Insured** during the **Policy Period** of October 1, 2012 to October 1, 2013.  The "purpose behind 'claims made' insurance [is] to limit [the insurer's] liability to a fixed period of time . . . .  In this regard, it is the making of the claim which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place."  *Nat'l Waste Assocs., LLC v. Travelers Cas. and Sur. Co. of Am.*, 988 A.2d 402, 406-07 (Conn. Super. Ct. 2008) (internal quotations and citation omitted).  Courts in Connecticut thus routinely hold that this claims-made requirement is the "essence" of a claims-made and reported policy.  *See, e.g.*, *Tucker v. Am. Int'l Grp., Inc.*, No. 3:09-cv-1499, 2015 WL 403195, at *10 (D. Conn. Jan. 28, 2015) ("In a 'claims made' policy, the insurer's limited obligation to cover only those claims

made during the policy period is 'material' to the parties' agreement . . . .  Put simply, if the claim falls outside the policy period, coverage is precluded.  Under such circumstances, coverage is not being denied because of failure to give prompt notice of a claim within the policy period.  Coverage is being denied because the claim was made before the effective date of the policy which is a predicate to any issue of notice of the claims under this type of policy.") (internal quotations and citations omitted); *Cabrera v. United Coastal Ins. Co.*, Nos. CV040833416S, CV040833417S, 2005 WL 1971216, at *6 (Conn. Super. Ct. July 18, 2005) (noting that claims-made policies require "that the claim be made during the policy period in order for the loss to be treated as falling within the period of time covered by the policy.") (internal quotation and citation omitted); *ITC Invs., Inc. v. Emp'rs Reinsurance Corp.*, No. CV98115128, 2000 WL 1996233, at *14 (Conn. Super. Ct. Dec. 11, 2000) ("In a 'claims made' policy, the obligation of the insurer only to cover claims made during the policy period is 'material' to the agreement of the parties for all the reasons stated-in fact, it is the essence of the insurance agreement which permits insurers to rationally estimate appropriate reserves and thus allow lower rates on insurance for professionals."); *City of New London v. Gen. Star Indem. Co.*, No. 532435, 1995 WL 684792, at *3 (Conn. Super. Ct. Nov. 13, 1995) (holding that coverage was precluded under a claims-made policy because the claim was first made prior to the policy's effective date).

### ii. No coverage is available under the Allied World Policy for the *Corona* Action because it is a Claim that was first made after the expiration of the Allied World Policy.

The Allied World Policy does not afford coverage for the *Corona* Action for the simple, undisputed reason that the **Claim** was first made years after the expiration of the Allied World Policy.  Compl. ¶ 17.  The Allied World Policy expressly states that Insuring Agreement A is only implicated if the "**Claim** is first made against the **Insured** during the **Policy Period**."

Allied World Policy (Ex. B), Section I.A.1.  The Allied World Policy defines "**Claim**" to mean

"a written demand seeking monetary damages."  Allied World Policy (Ex. B), Section II.F.  The

underlying complaint in the *Corona* Action constitutes a **Claim** because it is a written pleading

filed against Plaintiffs expressly demanding monetary damages in connection with their alleged

medical negligence.  The **Claim** was first made on November 3, 2015, the date on which the

underlying complaint was filed.  However, the Allied World Policy expired on October 1,

2013—over two years before the underlying complaint in the *Corona* Action was filed.  As such,

no coverage is available for the **Claim** because it was not made until long after the expiration of

the Allied World Policy.

> **iii.**   **Allied World was not notified of the complications of Corona's labor and delivery during the Allied World Policy, and so the *Corona* Action cannot relate back to any earlier notice provided during the Policy Period.**

Typical of claims-made and reported policies, the Allied World Policy permits (and in

some cases requires) the **Insureds** to provide notice during the **Policy Period** of circumstances

that could be expected to result in a **Claim**, in which event any later **Claim** arising from those

circumstances is deemed to have been made during the **Policy Period** when the notice was

given.  *See* Allied World Policy (Ex. B), Section IV.F.  These kinds of provisions permit an

insured to preserve coverage for claims that may result from known circumstances where no

claim has been made by the end of the policy period.  At the same time, the insurer under the

claims-made and reported policy can close the books on the policy at the end of the policy

period, knowing the full universe of all claims and potential claims for which it may be required

to provide coverage.  This certainty that is provided to the insurer at the end of a policy period is

what distinguishes claims-made and reported policies from occurrence policies, and is at the

heart of why claims- made policies are less expensive, and why the reporting provisions of

claims-made and reported policies are strictly enforced with no prejudice requirement.  *See*

*Asche v. Hartford Ins. Co. of Ill.*, No. 3:03cv416 (PCD), 2006 WL 2792881, at *8 (D. Conn.

Sept. 28, 2006) ("Claims-made policies place special reliance on notice.  Through the notice

requirement inherent in claims-made policies, insurers are left with the knowledge that if no

claims have been made when the policy period expires, it retains no liability under the policy.

This makes the insurer better able to compute reserves and premiums, and the insured benefits

from this certainty through lower premiums.  As such, if the insured fails to provide adequate

notice under the terms of the policy within the policy period, no coverage is provided.") (internal

citations omitted); *Bepko v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1996 (PCD), 2006 WL

2331076, at *8 (D. Conn. Aug. 10, 2006) ("Claims made policies are generally cheaper; the

insurer trades a reduced coverage period and the ability to 'close the book on an account' in

exchange for lower payments.") (internal citation omitted); *Eisenhandler v. Twin City Fire Ins.

Co.*, No. CV095031716S, 2011 WL 5458180, at *3 (Conn. Super. Ct. Oct. 21, 2011) ("Claims

made policies are often a more economical way to provide coverage for risks like professional

responsibility, because the notice requirements allow an insurer to 'close its books' on a policy at

the expiration date and thus attain a level of predictability unattainable under standard

occurrence policies.") (internal citations omitted); *Nat'l Waste Assocs.*, 988 A.2d at 407 ("The

reporting requirement of a claims made policy . . . eliminate[s] an insurer's tail exposure by

minimizing the time between the insured event and the payment . . . .  Because the reporting

requirement provides insurers greater certitude as to their liability exposure, an insured [under a

claims-made policy] pays a lesser premium, and receives broader coverage than under an

occurrence policy because conduct occurring before the policy term is covered . . . .  In this

regard, the reporting/notice requirement in a claims made policy is considered [a] valid condition

13

. . . precedent and not just [a] technical requirement . . . .  Given the purpose and function of the reporting requirement in a claims made policy, such reporting requirements are strictly construed . . . .  In this regard, numerous courts have held that excusing a delay in notice beyond the claims made policy period would alter a basic term of the insurance contract.") (internal quotations and citation omitted); Gerald P. Dwyer, Jr., *Appleman on Insurance Law and Practice*, § 4.04[4][d][i] ("[U]nderwriters may more accurately predict an insurer's potential liability.  This decreased risk allows insurers to supply claims made policies at a lower price, thereby benefiting insureds.").

Here, Plaintiffs did not provide notice to Allied World during the **Policy Period** of any act, error, omission, or **Occurrence** that subsequently gave rise to the *Corona* Action.  To the contrary, Plaintiffs did not provide any notice at all to Allied World until three and half years after the **Policy Period** expired and a year and a half after the *Corona* Action was filed.  Compl. ¶¶ 22, 24.  Thus, the *Corona* Action cannot be deemed first made during the **Policy Period** of the Allied World Policy.

The fact that Day Kimball provided immediate notice of circumstances to its then-primary insurance carrier regarding the birth-related and internal injuries that arose from Corona's labor and delivery does not change this analysis.  The Allied World Policy specifically states that notice to an underlying insurer does <u>not</u> constitute notice to Allied World.  It also clearly and unambiguously requires that notice to Allied World must be given in writing by certified mail, express overnight mail, or prepaid courier, and sent to Allied World at the address listed on the Declarations page of the Allied World Policy.  *See* Policy (Ex. B), Section IV.D.4 ("Notice to any underlying insurers of matters listed in D.1 . . . will not be deemed sufficient to establish reporting or notice to the **Insurer**.  Notice of a matter listed in subsections D.1 . . . must

be sent in writing by certified mail, express overnight mail, or prepaid courier to the **Insurer** at

the address specified in Item 5 of the Declarations.").  As noted above, the Allied World Policy

defines "**Insurer**" to mean Allied World, "the Company identified in the Declarations."  Allied

World Policy (Ex. B), Section II.P; Allied World Policy (Ex. B), Declarations.  Thus, Plaintiffs'

notice to their primary insurance carrier did not satisfy the Allied World Policy's reporting

provisions and is insufficient to trigger coverage under the Allied World Policy.

      The *Corona* Action is a **Claim** that was first made after the expiration of the Allied

World Policy on October 1, 2013, and no coverage is available for the **Claim** because it was not

first made during the **Policy Period**.

      **iv.**      **Plaintiffs cannot report circumstances that could give rise to a Claim years after the end of the Policy Period.**

      It is undisputed that: (1) the *Corona* Action was not first made during the **Policy Period**;

and (2) Plaintiffs did not provide notice of circumstances to Allied World during the **Policy**

**Period** of the birth-related and internal injuries that arose during Corona's labor and delivery**,**

such that the later-asserted *Corona* Action would be deemed to be a **Claim** first made during the

**Policy Period**.

      The only potential argument Plaintiffs could attempt to make, therefore, is that the Allied

World Policy allowed them to provide notice of circumstances that may result in a **Claim** in

perpetuity and that, regardless of when that notice was provided, any **Claim** arising from the

notified circumstances would be deemed to have been first made during the **Policy Period**.  As

specifically applied here, Plaintiffs' position would be that they were permitted to provide notice

of circumstances to Allied World three and a half years after the claims-made and reported

Allied World Policy had expired.  This position is untenable on its face, inconsistent with the

fundamental nature of claims-made and reported policies, and contrary to established

Connecticut law.

  The critical point in this regard is that to permit Plaintiffs to give notice of circumstances

that could result in a **Claim** after the **Policy Period** expired would be to impermissibly transform

the claims-made and reported nature of the Allied World Policy into an "occurrence-based"

policy.  An occurrence-based policy "protects the insured from liability for any act done while

the policy is in effect.  Coverage depends on when the negligent act or omission occurred, not

when the claim was asserted . . . .  The major drawback of an 'occurrence' policy is the lengthy

and unpredictable 'tail' of liability, since there is no defined time when coverage ends." *Am.*

*Home Assur. Co. v. Abrams*, 69 F. Supp. 2d 339, 347 (D. Conn. 1999) (internal citations

omitted).  Plaintiffs, by contrast, purchased a claims-made and reported policy, which affords

"coverage . . . for claims first made against the insured . . . during the policy period, even when

the event causing the harm occurred prior to the policy period . . . .  Such a policy has the distinct

advantage for the insurer of providing certainty that, when the policy period ends without a claim

having been made, the insurer will be exposed to no further liability."  *Id.* at 346 (internal

citations omitted).

  In recognition of the distinct differences between these two kinds of policies, Connecticut

law prohibits extending coverage for claims that were not first made during the relevant policy

period, because to do so "would be to open the doors of coverage to all professional liability

claims asserted against [the insured], regardless of when the claims were made, in essence

turning this claims-made policy into an occurrence policy."  *Abrams*, 69 F. Supp. 2d at 349; *see*

*also ITC Invs., Inc.*, 2000 WL 1996233, at *14 (noting that it "could not find any case where, it

having been posited that a claim was made before the effective date of the policy period . . .

coverage was allowed or the matter even discussed on the basis of some notion that the insurer should still cover the claim because it would not be prejudiced in its ability to contest it.  Why is that?  The simple answer is that would be converting a 'claims made' policy into an 'occurrence' policy and the insured not having bargained for such coverage or paid the premium is not entitled to it."); *Gulf Ins. Co. v. Murdock Claim Mgmt. Corp.*, No. HHDX04CV022252S, 2009 WL 2872511, at *6 (Conn. Super. Ct. Aug. 4, 2009) ("The purpose of claims-made policies, unlike occurrence policies, is to provide exact notice periods that limit liability to a fixed period of time after which an insurer knows it is no longer liable under the policy, and for this reason such reporting requirements are strictly construed . . . .  Allowing coverage beyond that period would be to grant the insured more coverage than that which was bargained for, and to require insurers to provide coverage for risks not assumed.") (internal citation and quotation omitted).  Having bargained and paid for a claims-made and reported policy, Plaintiffs may not now unilaterally rewrite the material terms of the agreement to force Allied World to extend coverage for the *Corona* Action where it is not a **Claim** first made during the **Policy Period**.

## V.     CONCLUSION

Considering only the facts alleged in the Complaint, coverage is unavailable for the *Corona* Action because: (1) it is not a **Claim** first made during the **Policy Period** of the Allied World Policy, as is required to trigger the Allied World Policy's Insuring Agreement A; and (2) Plaintiffs did not provide notice of circumstances that could give rise to a **Claim** during the **Policy Period**, and therefore the later-made *Corona* Action cannot be deemed to have been first made during the **Policy Period**.  Accordingly, Allied World respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice.

Respectfully submitted,


By:  /s/ Cristin E. Sheehan (CT26207)
Cristin E. Sheehan
Fed. Bar No. CT26207
MORRISON MAHONEY LLP
One Constitution Plaza, 10th Floor
Hartford, CT 06103
Phone: (860) 616-4441
Fax: (860) 541-4883
Email: cesheeha@morrisonmahoney.com

Of Counsel:

Richard A. Simpson (*pro hac vice* to be filed)
Kimberly A. Ashmore (*pro hac vice* to be filed)
Jessica N. Gallinaro (*pro hac vice* to be filed)
WILEY REIN LLP
1776 K Street NW
Washington, D.C. 20006
Phone: 202-719-7000
Fax: 202-719-7049
rsimpson@wileyrein.com
kashmore@wileyrein.com
jgallinaro@wileyrein.com

*Counsel for Allied World Surplus Lines
Insurance Company f/k/a Darwin Select
Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of October, 2019, I caused to be served by U.S. mail the foregoing Defendant Allied World Surplus Lines Insurance Company f/k/a Darwin Select Insurance Company's Memorandum of Law in Support of its Motion to Dismiss for Failure to State a Claim upon the following:

> Michael T. McCormack
> O'Sullivan McCormack Jensen & Bliss PC
> Putnam Park, Suite 100
> 100 Great Meadow Road
> Wethersfield, CT 06109-2371
>
> *Counsel for Plaintiffs Day Kimball Healthcare Inc. and Erica J. Kesselman, M.D.*
>
>
> Dominic Spinelli
> Peabody & Arnold LLP
> Federal Reserve Plaza
> 600 Atlantic Avenue
> Boston, MA 02210
>
> *Counsel for Defendant Steadfast Insurance Company*

> /s/ Cristin E. Sheehan (CT26207)
> Cristin E. Sheehan
> Fed. Bar No. CT26207
> MORRISON MAHONEY LLP
> One Constitution Plaza, 10th Floor
> Hartford, CT 06103
> Phone: (860) 616-4441
> Fax: (860) 541-4883
> Email: cesheeha@morrisonmahoney.com