UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAY KIMBALL HEALTHCARE, INC., et al, ) <br>     *Plaintiffs*, ) <br> ) <br> v. ) <br> ) <br> ALLIED WORLD SURPLUS LINES ) <br> INSURANCE COMPANY, et al, ) <br>     *Defendants*. ) | 3:19-CV-01521 (KAD) <br><br><br><br><br><br><br> October 9, 2020 |

**MEMORANDUM OF DECISION RE: DEFENDANT STEADFAST INSURANCE COMPANY'S MOTION TO DISMISS [ECF NO. 18] AND DEFENDANT ALLIED WORLD SURPLUS LINES INSURANCE COMPANY'S MOTION TO DISMISS [ECF NO. 19]**

Kari A. Dooley, United States District Judge

Plaintiffs, Day Kimball Healthcare, Inc. ("Day Kimball") and Erica J. Kesselman, M.D. ("Dr. Kesselman"), seek a declaratory judgment finding that each Defendant, Allied World Surplus Lines Insurance Company f/k/a Darwin Select Insurance Company ("Allied World") and Steadfast Insurance Company ("Steadfast"), has a duty to indemnify the Plaintiffs pursuant to their respective insurance policies in connection with an underlying medical malpractice lawsuit.[1] Allied World and Steadfast each moved to dismiss on the ground that they properly denied coverage to Plaintiffs because their respective policies do not provide coverage for the underlying lawsuit. For the following reasons, Defendants' motions to dismiss are GRANTED.

**Background and Procedural History**

Day Kimball and Dr. Kesselman seek insurance coverage under a policy issued by Allied World ("Allied World Policy") and a policy issued by Steadfast ("Steadfast Policy") in connection

---

[1] Defendants argue that Dr. Kesselman is not a beneficiary of either insurance policy, but that issue is not the subject of either motion to dismiss.

with an underlying medical malpractice lawsuit brought against Day Kimball and Dr. Kesselman on November 3, 2015 captioned *Megan Corona, et al. v. Day Kimball Healthcare, Inc., et al.*, Docket No. X07-HHD-CV15-6075511 (Superior Court of Connecticut for the Judicial District of Putnam) (the "underlying lawsuit").

**Underlying Lawsuit**

According to the underlying lawsuit, on August 7, 2013, Meagan Corona gave birth to Estella Tabor at Day Kimball Hospital with the assistance of Dr. Kesselman, who performed the delivery. After the delivery, Estella Tabor was transported to the UMass Medical Center and placed in the neonatal intensive care unit. Thereafter, on November 3, 2015, Meagan Corona, individually and as PPA of Estella Corona (the "Corona Plaintiffs"), commenced the underlying lawsuit against Day Kimball and Dr. Kesselman. Therein, the Corona Plaintiffs allege that, due to Day Kimball's and Dr. Kesselman's professional negligence, (1) Estella Tabor suffers from cerebral palsy, brain injury, mental disabilities and defects, all with pain, suffering, mental and emotional anguish and distress, and physical limitations and (2) a surgical sponge was left inside Meagan Corona requiring surgical removal, inflammation, infection, urinary tract infection, deformity, all with pain, suffering, mental and emotional distress, and physical limitations.

**The Instant Insurance Coverage Dispute**

Disposition of the instant motions to dismiss requires a general understanding of the relation between Plaintiffs' various insurance policies. Plaintiffs' primary insurance policy was issued by non-party Lexington Insurance Company (the "Lexington Policy") and includes coverage for a variety of liabilities, to include, professional liability coverage for medical malpractice claims. (ECF No. 36-1 at 6). Beyond the Lexington Policy, Plaintiffs secured excess policies from both Allied World and Steadfast. The Allied World Policy consists of three Insuring

Agreements: Insuring Agreement A, Insuring Agreement B, and Insuring Agreement C. (ECF No. 1 at 76–77). Insuring Agreement A provides excess coverage to the Lexington Policy for professional liability and is a "claims-made and reported policy," meaning that Allied World only provides coverage for claims made and reported within the applicable policy period regardless of when the acts giving rise to the liability occurred. (*Id*. at 76). The applicable policy period for Insuring Agreement A was October 1, 2012 through October 1, 2013. (*Id*. at 74, 76). Insuring Agreement B, irrelevant to this case, provides excess coverage to the Lexington Policy for general commercial lability. (*Id*. at 74, 76–77). The scope of coverage afforded by Insuring Agreement C is the issue to be resolved herein. Plaintiffs argue that Insuring Agreement C provides excess coverage to the Lexington Policy generally while Defendants argue that Insuring Agreement C only provides excess coverage to the Lexington Policy for employee benefits related claims. And finally, the Steadfast Policy is a follow-form policy providing excess coverage to the Allied World Policy. (ECF No. 1 at 111).

On August 8, 2013, Day Kimball gave notice to Lexington under the Lexington Policy of the issues relating to the birth of Estella Tabor. Under the Lexington Policy, Lexington agreed to defend and has been defending Day Kimball and Dr. Kesselman in the underlying lawsuit. On March 24, 2017, Day Kimball provided Allied World and Steadfast with notice of the underlying lawsuit. On April 10, 2017, Allied World declined to provide excess coverage for the underlying lawsuit under the Allied World Policy because the claim was brought outside the applicable policy period. And, on May 19, 2017, Steadfast followed suit and declined excess coverage for the underlying lawsuit. In response, on August 30, 2019, Plaintiffs brought the instant action in the Connecticut Superior Court seeking a declaratory judgment that each Defendant must indemnify Plaintiffs pursuant to their respective policies in connection with the underlying lawsuit. On

September 26, 2019, Allied World, with Steadfast's consent, removed the action to this Court. Thereafter, on October 17, 2019, each Defendant separately moved to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6). Plaintiffs responded to Defendants' motions on November 21, 2019 and Defendants replied to Plaintiffs' responses on December 6, 2019. This Court held oral argument on the motions on April 27, 2020.[2]

**Standard of Review**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The Court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the nonmovant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010). In doing so, the Court may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken . . . ." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

Because this is a diversity case, the Court applies Connecticut substantive law. *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005) (federal courts sitting in diversity apply the substantive law of the forum state). "Under Connecticut law, the interpretation of an

---

[2] On April 14, 2020, the Court began to hold oral argument, but it was suspended by the Court due to technical difficulties.

insurance policy is a question of law for the court." *Arrowood Surplus Lines Ins. Co. v. Westport Ins. Corp.*, No. 3:08CV01393 AWT, 2010 WL 56108, at *2 (D. Conn. Jan. 5, 2010), *aff'd sub nom. Arrowood Surplus Lines Ins. Co. v. Westport Ins. Co.*, 395 F. App'x 778 (2d Cir. 2010) (citing *Pac. Indem. Ins. Co. v. Aetna Cas. & Sur. Co.*, 688 A.2d 319, 321 (1997)). "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy [and] [t]he policy words must be accorded their natural and ordinary meaning[.]" *Aetna Cas. & Sur. Co.*, 688 A.2d at 321 (internal quotation marks omitted). Significantly, the Court "must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result . . . ." *Arrowood Indem. Co. v. King*, 39 A.3d 712, 717 (2012). Further, "any ambiguity in the terms of an insurance policy must be construed in favor of the insured [but such rule] may not be applied . . . unless the policy terms are indeed ambiguous [and] the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous . . . ." *Aetna Cas. & Sur. Co.*, 688 A.2d at 321. In fact, the Court will not "torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity[.]" *Hammer v. Lumberman's Mut. Cas. Co.*, 573 A.2d 699, 704 (1990) (internal quotation marks omitted).

**Discussion**

Plaintiffs argue that they are entitled to coverage for the underlying lawsuit principally through the Allied World Policy's Insuring Agreement C.[3] Indeed, the parties agree that if the

---

[3] In the Complaint, Plaintiffs assert that they have coverage under Insuring Agreement A. There is no question that Insuring Agreement A provided excess coverage for the professional liability policy under which Lexington is currently defending the Plaintiffs. In its motion to dismiss, therefore, Allied World expended considerable effort to demonstrate, and did so persuasively, that as a "claims-made and reported policy" coverage would only be provided

5

Court finds that Insuring Agreement C provides coverage for the underlying lawsuit, both Allied World and Steadfast must provide coverage to Plaintiffs pursuant to their respective policies. In the alternative, if the Court finds that Plaintiffs are not entitled to coverage under Insuring Agreement C, Plaintiffs argue that Steadfast must provide them coverage pursuant to the Steadfast Policy's maintenance provision. For the following reasons, the Court finds that Plaintiffs are not entitled to coverage for the underlying lawsuit under either policy.

### Coverage Under the Allied World Policy

Insuring Agreement C, provides with respect to its scope of coverage:

> The **Insurer** will pay on behalf of the **Insured**, subject to the Limit of Liability set forth in the Declarations, **Loss** and **Defense Expenses** *in excess of the **Applicable Underlying Limit** for the insurance identified in Items 3 and 4 of the Schedule of Underlying Insurance* which the **Insured** becomes legally obligated to pay as a result of a **Claim** covered by such Scheduled Underlying Insurance.

(ECF No. 1 at 77 (emphasis in original; italics added)). The relevant portion of the "Schedule of Underlying Insurance" is set forth below:

---

for claims made within the applicable policy period, regardless of when the events giving rise to the claims occurred. The Plaintiffs did not make any claim in connection with the underlying lawsuit within the applicable policy period. Accordingly, the Plaintiffs do not have coverage under Insuring Agreement A. Notwithstanding the allegations in the Complaint, in opposing the motions to dismiss, the Plaintiffs assert only that coverage arises out of Insuring Agreement C, a position confirmed at oral argument.

| ITEM NUMBER | TYPE OF COVERAGE | INSURER, POLICY NUMBER, POLICY PERIOD | LIMITS OF LIABILITY |
|---|---|---|---|
| 1 | Professional Liability | Insurer: Lexington Insurance Company<br>Policy Number: 6796761<br>Policy Period: 10/1/12 – 10/1/13 | Per Claim or Medical Professional Incident Limit: $1,000,000<br>Aggregate Limit: $3,000,000 |
| 2 | Commercial General Liability | Insurer: Lexington Insurance Company<br>Policy Number: 6796761<br>Policy Period: 10/1/12 – 10/1/13 | Per Occurrence Limit: $1,000,000<br>Aggregate Limit: $3,000,000 |
| 3 | Employee Benefits Liability | Insurer: Lexington Insurance Company<br>Policy Number: 6796761<br>Policy Period: 10/1/12 – 10/1/13 | Per Claim Limit: $1,000,000<br>Aggregate Limit: $1,000,000 |
| 4 | Automobile Liability | Insurer: Zurich American Insurance Co.<br>Policy Number: BAP3036733-07<br>Policy Period: 10/1/12 – 10/1/13 | Bodily Injury and Property Damage Combined Single Limit<br>Per Accident: $1,000,000<br>Aggregate Limit: $ |
| 5 | Employers' Liability | Insurer: MEMIC Indemnity Co.<br>Policy Number: 310 2801657<br>Policy Period: 10/1/12 – 10/1/13 | Bodily Injury Limit<br>Per Accident: $500,000<br>Bodily Injury per Disease Total Limit: $500,000<br>Bodily Injury per Disease Each Employee Limit: $500,000 |

(*Id*. at 74). The type of coverage identified in Item 3 is "Employee Benefits Liability" and the type of coverage identified in Item 4 is "Automobile Liability." [4] Item 3 reflects that the primary insurer is Lexington and identifies the Lexington Policy number. Significantly, Insuring Agreement A, which the Plaintiffs now concede does not provide excess coverage under these circumstances, provides with respect to its scope of coverage:

> The **Insurer** will pay on behalf of the **Insured**, subject to the Limits of Liability set forth in the Declarations, **Loss** and **Defense Expenses** *in excess of the*

---

[4] The parties agree that the insurance identified in Item 4, i.e., a Zurich policy for automobile liability, is irrelevant in this case.

> ***Applicable Underlying Limit*** *for the coverage identified in Item 1 of the Schedule of Underlying Insurance . . .* which the **Insured** becomes legally obligated to pay as a result of a **Claim** alleging a **Medical Professional Incident**[.]

(*Id*. at 76 (emphasis in original; italics added)). And as revealed above, Item 1 identifies the type of coverage as "Professional Liability" and also reflects that the primary insurer is Lexington and includes the same policy number for the Lexington Policy as is found in Item 3. The Schedule of Underlying Insurance was therefore relied upon in each of the Insuring Agreements to define the coverage afforded in the excess coverage agreements.

Allied World and Steadfast argue therefore that Insuring Agreement C provides limited excess coverage to the Lexington Policy for very specific types of claims, i.e., "Employee Benefits Liability," and that excess coverage to the Lexington Policy for professional liability was provided exclusively within Insuring Agreement A. In response, Plaintiffs argue that reading the policies as a whole, Insuring Agreement C's use of the word "insurance" instead of "coverage" means that Insuring Agreement C provides excess coverage for all matters covered by the Lexington Policy, to include the underlying lawsuit. Specifically, they posit that since Insuring Agreement A refers to the "*coverage* identified in Item 1 of the Schedule of Underlying Insurance," and Insuring Agreement C refers to the "*insurance* identified in Items 3 and 4 of the Schedule of Underlying Insurance," (*Id*. at 76–77 (emphasis added)), the scope of Insuring Agreement C is co-extensive with the Lexington Policy. The Court disagrees.

The use of two largely interchangeable words[5] does not create ambiguity nor upend the clear structure set-up by the relationship between the Schedule of Underlying Insurance and the individual Insuring Agreements. The Insuring Agreements specifically identify the item or items

---

[5] "Coverage" is defined as, *inter alia*, "inclusion within the scope of an insurance policy or protective plan: INSURANCE." *Coverage*, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2009). Similarly, "insurance" is defined as "coverage by contract whereby one party undertakes to indemnify or guarantee another against loss by a specified contingency or peril." *Insurance*, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2009).

within the Schedule of Underlying Insurance to which they provide excess coverage. The Schedule of Underlying Insurance then specifically and unambiguously identifies, among other attributes, the type of coverage and the underlying policy to which each item refers. To find that the word "insurance" rather than "coverage" in the scope of coverage provision of Insuring Agreement C subverts the plain structure of the Allied World Policy would require the court to "torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity[.]" *Hammer*, 573 A.2d at 704 (internal quotation marks omitted). Insuring Agreement C, for the purposes of this case, provides excess coverage to the Lexington Policy's employee benefits liability coverage only.[6] Insuring Agreement C does not provide coverage for the underlying medical malpractice lawsuit insofar as the suit is unrelated to claims regarding employee benefits programs.[7]

---

[6] Notably, there is a specific insuring agreement within the Lexington Policy that provides coverage for wrongful acts committed "while acting solely within the administration of [the insured's] employee benefit programs." (ECF No. 36-1 at 45). Further, in the Lexington Policy, "employee benefit programs" is defined, in relevant part as, "[g]roup life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, workers compensation, unemployment insurance, social security benefits, disability benefits . . . ." (*Id.* at 47).

[7] Plaintiffs point to other provisions or definitions within the Allied World Policy as lending support to their argument that the use of the word "insurance" instead of "coverage" broadens the scope of Insuring Agreement C. They first note that "Applicable Underlying Limit," as that term is used in the scope of coverage provision, is defined, in relevant part, as "the total of all available limits of liability for the applicable **Underlying Insurance** . . . ." (ECF No. 1 at 78 (emphasis in original)), and "Underlying Insurance" is defined, in relevant part, as, "the *insurance* policies identified in the Schedule of Underlying Insurance . . . ." (*Id.* at 84 (emphasis added)). Thus, Plaintiffs argue that because the definition of "Underlying Insurance" uses the word "insurance" it must refer to the policy identified in the Schedule of Underlying Insurance as a whole rather than just a specific type of coverage within the policy identified. Plaintiffs cite no authority for this dubious inference. As discussed above, the structure of the Allied World Policy—tying the scope of coverage in the Insuring Agreements to the Schedule of Underlying Insurance—renders Plaintiffs' argument unpersuasive. And Plaintiffs would have this Court ignore the express "type of coverage" identified in the Schedule of Underlying Insurance in favor of this dubious inference, which the Court cannot do. *King*, 39 A.3d at 717 (The Court "must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result . . . ."). Next, Plaintiffs point to a provision regarding liability limits as proof that a "Medical Professional Incident," such as the underlying lawsuit, may implicate more than one Insuring Agreement. Indeed, Section IV.A.1 of the Allied World Policy provides that the insurer's total liability will not exceed the aggregate loss limit identified in the declarations even if a "**Medical Professional Incident** results in a **Claim** to which multiple Insuring Agreements apply . . . ." (ECF No. 1 at 92 (emphasis in original)). However, even if the provision suggests that multiple Insuring Agreements may apply to a particular "Medical Professional Incident," a proposition with which the Court takes no issue, the provision does not lend any support to the notion that Insuring Agreement C is such a policy. Again, as discussed above, it clearly is not. Plaintiffs also direct the Court's attention to two exclusions which apply to each Insuring Agreement within the Allied World Policy. They are: Exclusion D.1, which excludes liability arising out of the ownership of various vehicles, and Exclusion D.7, which excludes liability for employee injuries, among others. (*Id.* at 87, 89). These exclusions reflect that they will "not apply if such liability is covered by valid and collectible insurance identified in Item 4 of the Schedule of Underlying

Allied World's Motion to Dismiss is GRANTED.[8]

**Coverage Under the Steadfast Policy**

Plaintiffs claim they are entitled to coverage for the underlying lawsuit under the Steadfast Policy for two reasons: (1) the Steadfast Policy provides excess coverage to the Lexington Policy and the Allied World Policy and (2) even if Plaintiffs are not entitled to coverage under the Allied World Policy, they are entitled to coverage under the Steadfast Policy through its "maintenance provision." For the following reasons, the Court rejects both arguments.

First, Plaintiffs point to the Steadfast Policy's "Insuring Agreement," which provides:

> In consideration of the payment of the premium, and in reliance upon the statements in the Declarations and in the application made a part of this policy, subject to all of the terms of this policy, we agree to pay on behalf of any "insured" that portion of "ultimate net loss" in excess of "underlying insurance" stated in Item 5 of the Declarations.
>
> Except as otherwise provided by the specific terms contained in this policy, the insurance afforded by this policy shall follow all the terms, conditions, definitions and exclusions of the "governing underlying insurance policy" designated in Item 6 of the Declarations. Should any of the provisions of the "governing underlying insurance policy" conflict with our policy, the provisions of our policy will apply.

(ECF No. 1 at 111). Specifically, Plaintiffs note that Steadfast agreed to pay "that portion of 'ultimate net loss' in excess of 'underlying insurance' stated in Item 5 of the Declarations." (*Id.*).

Item 5 of the Declarations states:

---

Insurance, and in such event coverage shall only be afforded hereunder as set forth in Insuring Agreement C." (*Id.*). Thus, Plaintiffs assert, the exception to the exclusions is evidence that Insuring Agreement C is not limited to employee benefits coverage. However, Defendants do not argue that Insuring Agreement C is limited to employee benefits coverage. Rather they argue that Insuring Agreement C provides excess coverage to employee benefits coverage with respect to the Lexington Policy and excess coverage to automobile liability coverage with respect to the Zurich Policy, which is the "insurance identified in Item 4 of the Schedule of Underlying Insurance[.]" (*See id.* at 74, 87, 89). These exclusions do not lend support to the notion that Insuring Agreement C provides coverage for the underlying medical malpractice lawsuit.

[8] Because the Court finds that Plaintiffs are not entitled to coverage for the underlying lawsuit under the Allied World Policy, Plaintiffs' argument that Allied World was not prejudiced due to lack of notice is irrelevant.

> Item 5.  Underlying Insurance:
> Our limits of liability apply in excess of the following total limits of liability of "underlying insurance"
> (A) Each "Occurrence" or "Medical Incident"      $See Endorsement #14
> (B) Annual Aggregate                             $See Endorsement #14

(*Id*. at 109). And, "Endorsement #14" includes both the Allied World Policy and the Lexington Policy. (*Id*. at 131). Accordingly, Plaintiffs argue that the Steadfast Policy provides coverage in excess of that provided for by the Allied World Policy and the Lexington Policy. As a general proposition, this is not disputed.

However, Plaintiffs ignore that Steadfast provides only "follow form coverage," meaning that the Steadfast Policy's insuring agreement adopts the Allied World Policy's scope of coverage. *See Acadia Ins. Co. v. Am. Crushing & Recycling, LLC*, 475 F. Supp. 2d 168, 174 (D. Conn. 2007) ("Following form coverage is insurance that follows the same terms and conditions as the underlying or primary policy." (internal quotation marks and citations omitted)). Specifically, the Steadfast Policy provides: "the insurance afforded by [the Steadfast Policy] shall follow all the terms, conditions, definitions and exclusions of the 'governing underlying insurance policy' designated in Item 6 of the Declarations." (ECF No. 1 at 111). And, the "governing underlying insurance policy" designated in Item 6 of the Declarations is the Allied World Policy. (*Id*. at 109). Thus, the Steadfast Policy's scope of coverage is defined by the terms and conditions of the Allied World Policy. Therefore, Plaintiffs are entitled to coverage under the Steadfast Policy only insofar as they are entitled to coverage under the Allied World Policy. As discussed above, because Plaintiffs are not entitled to coverage for the underlying lawsuit under the Allied World Policy, they are likewise not entitled to coverage under the Steadfast Policy.

In the alternative, Plaintiffs argue that, even if they are not entitled to coverage under the Allied World Policy, they are entitled to coverage through the Steadfast Policy's maintenance provision. The maintenance provision, in relevant part, provides:

11

>   (iii) If the "underlying insurance" or limits listed in Item 5 of the Declarations are:
>
>   (a) not maintained;
>
>   (b) less than those indicated in Item 5 of the Declarations; or
>
>   (c) unavailable or uncollectible due to bankruptcy, insolvency, liquidation of an "underlying insurer", or your failure to comply with the terms and conditions of the "underlying insurance";
>
> our coverage will apply in the same manner as if the "underlying insurance" were still in effect, maintained and collectible.

(ECF No. 1 at 115). Plaintiffs assert that this provision compels Steadfast to provide coverage even if Plaintiffs fail "to comply with the terms and conditions of the 'underlying insurance,'" (*id*.), which includes the Allied World Policy. Plaintiffs provide no analysis and cite no authority in support of this argument. Nor do Plaintiffs identify any manner or means by which they failed to comply with the terms of the Allied World Policy, specifically Insuring Agreement C, the policy under which they seek coverage. Indeed, Allied World has not asserted that Plaintiffs failed to comply with the terms of Insuring Agreement C. Rather, Allied World asserts that Insuring Agreement C does not provide coverage for professional liability claims. Regardless, the maintenance provision, standard in excess insurance policies, does not expand the scope of Steadfast's obligations. It specifically states that the Steadfast Policy's coverage "will apply in the *same manner* as if the 'underlying insurance' were still in effect, maintained and collectible." (*Id.* (emphasis added)). Thus, the maintenance provision does not compel Steadfast to provide coverage in situations where the Allied World Policy does not. Indeed, such a finding would run completely contrary to the nature of a "follow form" policy. Instead, the maintenance provision merely states that Steadfast will provide coverage to Plaintiffs, subject to all applicable terms and conditions, including those defining the Steadfast Policy's scope of coverage, even if Allied World does not. Accordingly, whether the maintenance provision is triggered in this case, (which is

disputed), the Court need not decide, because, as discussed above, Steadfast is not required to provide coverage to Plaintiffs for the underlying lawsuit as it is not within the Steadfast Policy's scope of coverage.

Steadfast's Motion to Dismiss is GRANTED. [9]

**Conclusion**

For the foregoing reasons, Allied World's Motion to Dismiss is GRANTED and Steadfast's Motion to Dismiss is GRANTED. The Clerk of Court is directed to enter judgment in favor of Defendants Allied World and Steadfast and to close this matter.

**SO ORDERED** at Bridgeport, Connecticut, this 9th day of October 2020.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[9] Because the Court finds that Plaintiffs are not entitled to coverage for the underlying lawsuit under the Steadfast Policy, Plaintiffs' argument that Steadfast was not prejudiced due to lack of notice is irrelevant.